IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RALPH P. RAMANNA, JR.,<br>THOMAS E. LLEWELLYN,<br><br>        Plaintiffs,<br><br>    v.<br><br>COUNTY OF BEAVER and BEAVER<br>COUNTY SHERIFF'S DEPARTMENT,<br><br>        Defendants. | Civil Action No. 05-1738 |

MEMORANDUM OPINION

CONTI, District Judge

      Plaintiff Ralph Ramanna, Jr. ("plaintiff" or "Ramanna") and plaintiff Thomas Llewellyn ("plaintiff" or "Llewellyn") filed a complaint on December 16, 2005 alleging that they were terminated by the defendants County of Beaver and Beaver County Sheriff's Department ("defendants") in December 2004 because of age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* ("ADEA"), and the Pennsylvania Human Relations Act, 43 PA. CONS. STAT. ANN. §§ 951 *et seq.* ("PHRA"). Pending before this court is a motion for summary judgment ("Doc. No. 23") brought by defendants. After considering the joint statement of material facts, and the submissions of the parties, the court will grant summary judgment in favor of defendants for the reasons stated below.

### *Facts*

Plaintiffs in this case were both lieutenants of the Beaver County sheriff's department. (Joint Combined Statement of Material Facts ("Comb. Stat.")¶ 3.)[1] Llewellyn was 61 years of age and the oldest employee in the department when he was terminated from his position of lieutenant. (Affidavit of Thomas Llewellyn ("Llewellyn Aff.") ¶ 2.) Ramanna was 57 years of age when he was terminated from his position of lieutenant. (Comb. Stat. ¶ 24.) At the time of the layoff, plaintiffs were the only lieutenants who were eligible to retire. (Id. ¶ 53.)

The employees of the sheriff's office, except for office personnel, fall into three categories: 1) senior staff; 2) lieutenants; and 3) deputies. (Id. ¶ 2.) The senior staff of the Beaver County sheriff's department are administrative employees whose responsibilities include management, supervision, and the administrative oversight of the department.[2] (Id. ¶ 11.) The position of lieutenant is a non-union, salaried, management level, supervisory position in the sheriff's office. (Id. ¶ 4.) Lieutenants perform the following duties on a regular basis: service of civil process, service of warrants, prisoner transfer, answering citizen complaints, making arrests, traffic stops and traffic citations, patrol of county parks and other facilities, and courthouse security. (Llewellyn Aff. ¶ 3.) One of the lieutenants was responsible for running the central booking center at the Beaver County Jail, rather than performing the above-listed duties. (Comb. Stat. ¶ 7.) The deputies in the Beaver County sheriff's office are union employees, are paid hourly, exercise no managerial discretion, have no supervisory responsibilities, and the terms and conditions of their employment are controlled by a collective bargaining agreement. (Id. ¶¶ 8-10.)

---

[1]At the time of this case the sheriff was Felix DeLuca. (Id. ¶ 1.)
[2]In 2004, the senior staff was comprised of the chief deputy (David Matthews), the commander (Robert Vizyak), and the captain (Tom Shane). (Comb. Stat. ¶ 12.)

In December 2004, plaintiffs were notified that their positions were being eliminated effective January 1, 2005. (Id. ¶ 22.) Plaintiffs' claims of age discrimination assert that younger or less experienced, less tenured employees were treated more favorably than plaintiffs, in that they retained their employment. (Id. ¶ 25.) Llewellyn was the oldest of the five lieutenants working for the sheriff's department at the time of the reduction in force. (Id. ¶ 49.) At the time their positions were eliminated, Llewellyn was 61 years of age and Ramanna was 57. (Id. ¶ 24.) The remaining lieutenants were aged 53, 54 and 58. (Id. ¶ 24.) Ramanna was the most senior, tenured employee of the sheriff's office at the time of his termination, having served the department for thirty-two years. (Id. ¶ 51.) Ramanna served twenty years as the chief deputy and three months as the acting sheriff, within these thirty-two years of service. (Id. ¶ 51.) In addition, all the full-time deputies retained were significantly younger than plaintiffs. (Pls.' Facts ¶ 7.)

The elimination of plaintiffs' positions with the sheriff's department took place within the context of a county-wide reduction-in-force. (Comb. Stat. ¶ 13.) As a way of balancing the 2004 budget, the county commissioners issued a directive to all elected officials and department heads to reduce their budgets by 6%. (Id. ¶ 16.) The sheriff met his budgetary obligations for 2004 by eliminating twelve or thirteen part-time deputies from the department pursuant to the reduction in force, representing a reduction of about 50% of the part-time deputies. (Id. ¶ 17.) Late in 2004, the sheriff was instructed by the county commissioners that additional cuts would be necessary for 2005 and they directed the sheriff to cut an additional 6% out of his 2005 budget. (Id. ¶ 18.) After consulting with his senior staff on at least two occasions in the fall of 2004, the sheriff decided to eliminate two lieutenants from the management ranks in order to reduce the size of the sheriff's department in accordance with the reduction in force. (Id. ¶¶ 19-20.) The sheriff claims that he made his decision because his office was top heavy with supervisors. (Id. ¶ 21.)

The selection of plaintiffs as the two lieutenants whose positions were being eliminated in the force reduction came as the result of discussions held in staff meetings attended by the senior staff. (Id. ¶ 23.)  The sheriff asserts that he did not consider eliminating two deputies from their jobs in order to replace them with either Ramanna or Llewellyn because he thought this would result in an unfair labor practice and the filing of a grievance against the sheriff's office.[3]  (Id. ¶ 27.)  In the context of the county's reduction in force, the sheriff asserts that plaintiffs were selected for termination from the pool of five lieutenants because their conduct on the job compared less favorably in the eyes of the senior staff than that of the three remaining lieutenants. (Id. ¶ 28.)  The sheriff claims that his senior staff and he took the conduct into account relevant strengths and weaknesses of all five lieutenants in making their ultimate determination, although none of the lieutenants was considered a "bad" employee. (Id. ¶¶ 28-29.)

There were two main factors that the sheriff claimed led to the decision to eliminate Ramanna's position.  One factor was Ramanna's alleged resistance to authority and changes in the office. (Id. ¶ 30.)  The sheriff claims that since the inception of his tenure, Ramanna was viewed by his superiors as resistant to authority and changes in the office, difficult to work with and supervise, and lacking in interpersonal and management skills. (Id. ¶ 30.)  While he was never disciplined for this conduct, the sheriff asserts it was a definite factor when called upon to make his selection of which of the five lieutenants to keep. (Id.) The other factor cited by the sheriff was Ramanna's recent driving record, which included four job-related car accidents over a period of about eighteen months. (Id. ¶ 31.)  In December 2004, the sheriff believed that Ramanna demonstrated poor judgment by involving his service vehicle in four accidents while on department business in the two years preceding his termination. (Id. ¶ 45.)

---

[3]The sheriff stated that he believed the collective bargaining agreement between the deputies and the sheriff's office prohibited the sheriff from laying off deputies and replacing them with management level employees such as lieutenants. (Id. ¶ 26.)

The sheriff cites two particular incidents that led to the selection of Llewellyn as one of the lieutenants to be terminated.  The sheriff believed that Llewellyn demonstrated poor judgment by flushing drug evidence seized from a crime scene down a toilet in violation of department policy and by failing to prevent a deputy under his direct supervision from taunting a prisoner, removing his restraints, and engaging in physical contact and failing to take appropriate measures to report the incident or discipline the deputy. (Id.  ¶¶ 43-44.)  With respect to Llewellyn's involvement in destroying evidence from a drug arrest by personally flushing the drugs down a toilet, department policy prohibits the destruction of evidence in the absence of a court order, which Llewellyn failed to seek and obtain prior to flushing the drugs. (Id. ¶ 32-34.) Llewellyn was never disciplined for this incident and asserts that he had personally informed both the sheriff and Chief Deputy Matthews ("Mathews") that he had been ordered by Captain Short to destroy certain evidence, at which time he offered his resignation to the sheriff. (Id. ¶ 68.)  Llewellyn claims that Matthews told him that he was doing a fine job, that he should continue with his regular duties and that he would not be disciplined in any way for the incident. (Id.) Llewellyn maintains that the policy which he allegedly violated was not adopted until after this incident. (Id. ¶ 67.)

With respect to the second incident the sheriff cited in choosing Llewellyn for termination, that incident occurred when Llewellyn allegedly failed to supervise a deputy who taunted a prisoner into a fist fight in a cell.  (Id.  ¶ 37.)  The deputy being supervised by Llewellyn removed the prisoner's handcuffs and challenged him to a fight. (Id. ¶ 38.) Llewellyn observed the entire incident and assisted in subduing the prisoner, but made no immediate effort to file a report or discipline the deputy. (Id.  ¶ 39.)  The sheriff thought the deputy's removal of the prisoner's handcuffs violated the department's Use of Force and Prisoner Restraint Policies, designed to minimize the amount of contact needed to control a situation, and imposed a three-

day suspension on the deputy, which was later reduced. (Id. ¶¶ 40-41.)  During the grievance procedure where the deputy's suspension was reduced, the arbitrator noted Llewellyn's failure to recognize the seriousness of the incident as a reason for reducing the level of discipline for the deputy. (Id. ¶ 42.)  Llewellyn testified that this policy was not adopted until after the incident. (Pls.' Facts ¶ 23.)

The sheriff's department does not have a system of performance evaluation for the lieutenants working for the sheriff's office.  (Pls.' Facts  ¶ 21.)  At least one other lieutenant had received discipline from the sheriff at the time the decision was made about who would be laid off.  (Comb. Stat. ¶ 69.)  One of the five lieutenants working in the office at the time of the reduction in force, Lieutenant Cogan, was disciplined with a suspension of five days and a verbal warning from the sheriff after he failed to respond to a library's report of a  suspicious package. (Comb. Stat. ¶ 69.)  The sheriff's department explained that the lieutenant received this discipline because he did not write an incident report about the matter. (Id. ¶ 69.)  The sheriff considered the facts underlying this lieutenant's discipline to constitute a failure to follow the sheriff's "philosophy," but he did not select this lieutenant for termination because he otherwise "pretty much conformed to the sheriff's philosophy."(Id.  ¶ 70.)

Ramanna was never disciplined by the sheriff, except for possible verbal discipline relating to the four automobile accidents. (Id. ¶¶ 71-72.)  The sheriff did not know whether all the accidents at issue were the fault of Ramanna.  (Pls.' Facts ¶ 28.)  Ramanna was not written up or disciplined for any of the accidents.  (Comb. Stat. ¶ 77.)  No serious damage was done to vehicles involved in the accidents, nor were there any injuries.  (Pls.' Facts ¶¶ 29-31.) During his deposition testimony, Captain Harold Thomas Shane ("Shane"), one of the sheriff's senior staff members, made reference to Ramanna being "old school."  (Shane Dep. 12:10, May 1, 2007.) The relevant  testimony from Shane's deposition is as follows:

| Q. | Was that the only reason for Lieutenant Ramanna? |
|----|---|
| A. | No.  There were other decisions - - other cases that were brought up.  For example, it was, in my opinion, that Ralph was more of the old school where he didn't like the changes that sheriff DeLuca was making. |
| Q. | What changes are you referring to? |
| A. | Well, when we would have a meeting, then it would be said that as a team, as the  management team for the office, this is what we're going to do.  Instead of being a team player and saying, look, this is what we want you to do, directing to the deputies, it would be referred back to as this is what the sheriff wants you to do.  Not necessarily what I want you to do, but this is what the sheriff wants you to do.  So it's not - - it wasn't good to team cohesiveness, more taking the sides of the deputies. |

(Id. 12:7-25.)

The sheriff did not offer the plaintiffs positions as deputies when making the decision to eliminate the two lieutenant positions.  (Comb. Stat. ¶ 83.)  The sheriff did not offer deputy positions to Llewellyn or Ramanna because the sheriff believed the collective bargaining agreement, which covered the deputies would prohibit his doing so.   (Id.) The language of the collective bargaining agreement relied upon by the sheriff read as follows: "[I]n the event of reduction in force part-time deputies shall be laid off first beginning with the most junior deputy.  This application of seniority shall extend also to the reductions in regular scheduled work hours." (Id. ¶ 85.)  Captain Shane explained the way this process would work. (Id. ¶ 83.)  He testified that the collective bargaining agreement referred to by the sheriff did not prohibit the lieutenants from "bumping" down into the deputy ranks, but indicated "that if such a 'bump' was made, the lieutenant that bumped down would lose his seniority and become the next in line for further layoffs." (Id.)  The sheriff did not seek a legal interpretation of the contract provisions in the collective bargaining agreement and relied upon his own understanding of the agreement to provide the basis of his decision not to offer the bump down to the lieutenants. (Id. ¶¶ 86, 87.) Both Llewellyn and Ramanna were qualified for the lower level deputy positions. (Id. ¶ 92.)  The

sheriff did not discuss the possibility of "bumping down" the two lieutenants to deputy positions with his senior staff in deciding to eliminate the lieutenant positions. (Id. ¶¶ 89, 90.) The sheriff has, in at least one case, moved a lieutenant back to a deputy position at the employee's request, while at the same time placing another deputy into the lieutenant position. (Id. ¶ 91.)

### Standard of Review

Federal Rule of Civil Procedure 56© provides that summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56©. The existence of some disputed facts between the parties will not defeat a motion for summary judgment unless there is a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986). A party opposing a motion for summary judgment must set forth specific facts showing that there is a genuine issue for trial. Id. at 248. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 249.

### Discussion

On September 10, 2007, defendants brought the present motion for summary judgment, asserting that it is entitled to summary judgment on the following two theories: (1) plaintiffs did not establish a prima facie case of age discrimination because plaintiffs failed to show that they were terminated while other similarly situated and significantly younger employees were retained; and (2) there are no genuine issues of material fact that suggest that the legitimate non-discriminatory reasons for termination given by defendants were a pretext for age discrimination under the ADEA and PHRA. Plaintiffs argue that there are genuine issues of material fact about

the establishment of a prima facie case of age discrimination and whether the alleged reasons for the plaintiffs' termination were pretextual.  The court will address each argument raised by the defendants.

Claims under the Age Discrimination in Employment Act ("ADEA"), are subject to the shifting-burden framework articulated in <u>McDonnel Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), and its progeny.[4]  Under that framework, a plaintiff alleging age discrimination must first establish a prima facie case of age discrimination by demonstrating that the plaintiff: (1) is a member of the protected class, meaning, at least 40 years of age; (2) is qualified for the position; (3) suffered an adverse employment decision; and (4) in the case of a demotion or discharge, was replaced by a sufficiently younger person to create an inference of age discrimination.  <u>See</u> <u>Simpson v. Kay Jewelers Division of Sterling, Inc</u>., 142 F.3d 639, 644 n.5 (3d Cir. 1998).  In the case of a reduction in force, the fourth prong, as described above, is inadequate, because the terminated employee was not replaced.  The United States Court of Appeals for the Third Circuit has recognized in the case of a reduction in force, that the fourth element "is satisfied by showing that the employer retained a 'sufficiently younger' employee."  <u>Anderson v. Consolidated Rail Corp</u>., 297 F.3d 242, 249 (3d Cir. 2002) (quoting <u>Showalter v. University of Pittsburgh Med. Ctr.</u>, 190 F.3d 231, 235 (3d Cir. 1999)).

If the plaintiff successfully demonstrates a prima facie case of discrimination, the burden of production (but not the burden of persuasion) shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment decision.  <u>Simpson</u>, 142 F.3d at 644 n.5. If the employer meets its burden of demonstrating a legitimate, non-discriminatory reason for the

---

[4]PHRA claims of age discrimination have been treated coextensively with ADEA claims in both federal and Pennsylvania state courts. <u>See</u> <u>Simpson</u>, 142 F.3d 639, 644 n.4 (3d Cir. 1998); <u>Kelly v. Drexel University</u>, 94 F.3d 102, 105 (3d Cir. 1996).  The resolution of the ADEA claims will be dispositive of the PHRA claims.

employee's termination, the plaintiff must then present proof that the employer's articulated reason was not the actual reason, but rather a pretext for discrimination.  Id.

## A.  Prima Facie Case

In this case, the parties dispute whether plaintiffs set forth a prima facie case of discrimination.  The first three elements of the prima facie case have clearly been met by the plaintiffs.  First, Llewellyn, 61 years of age at the time of termination, and Ramanna, 57 years of age at the time of termination, are both members of the protected class.  Second, there is no dispute that both plaintiffs are sufficiently qualified for the position of lieutenant.  Third, the termination of plaintiffs qualifies as an adverse employment action for both employees.  The fourth element of the prima facie case is disputed by the parties.

To complete the prima facie case of age discrimination, plaintiffs must demonstrate "that the employer retained someone similarly situated to [the plaintiff] who was sufficiently younger." Anderson, 297 F.3d at 250.  To create an inference of discrimination, "plaintiff must point to evidence with sufficient probative force that a fact-finder could conclude by a preponderance of the evidence that age was a motivating or determinative factor in the employment decision."  Id. at 644-45. (citing Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1111 (3d Cir. 1997)).  To show that discrimination was more likely than not a cause for the employer's action, a plaintiff may show, for example, that the employer has previously discriminated against other persons within that protected class in the past, or that the employer has treated more favorably similarly situated persons not within the protected class.  Id. at 645.

## 1.  "Similarly Situated" Employee

To establish a prima facie case raising an inference of age discrimination in a reduction in force situation, the United States Court of Appeals for the Third Circuit has stated that "plaintiff

must show, as part of the fourth element, that the employer retained someone similarly situated to him who was sufficiently younger." Anderson, 297 F.3d at 250. In Anderson, the court analyzed whether each of the seventeen plaintiffs were "similarly situated to the sufficiently younger retained employees referenced by plaintiff" and ultimately upheld the lower court's grant of summary judgment for the defendants with respect to ten of the plaintiffs. Id. In order to demonstrate a similarly-situated retained individual and establish a prima facie case, the plaintiffs asserted they were comparable to other employees who performed jobs for which the plaintiffs were also qualified. Id. The plaintiffs argued that because "shuffling employees is the norm, plaintiffs should be able to challenge as discriminatory [the defendants'] failure to shuffle them to an assignment where they could outperform a less experienced incumbent." Id. The court rejected this contention because the plaintiffs failed to show evidence that the shuffling of assignments amongst different departments was a normal practice. Id. An attempt to satisfy the fourth element by comparing oneself to entry-level positions or other low-level positions without providing any evidence of shuffling was insufficient. Id. at 250.

The Court of Appeals for the Third Circuit also considered the "similarly situated" requirement in Monaco v. American General Assurance Co., 359 F.3d 296 (3d Cir. 2004), when applying the New Jersey Law Against Discrimination, N.J. STAT. ANN. §§ 10:5-1 *et seq.* ("NJLAD"). The court in Monaco first determined that the required elements for a prima facie case under the NJLAD were the same as those of the ADEA, and considered the factors for determining whether an employee was "similarly situated" to the plaintiff. Id. at 304. The court stated that the retained employee's job function need not be identical to the plaintiff's job, but the court must undertake a fact-intensive inquiry on a case-by-case basis considering the job function, level of supervisory responsibility, salary and other factors relevant to the particular work place. Id. at 305. Applying these factors, the court found that the plaintiff's position as

regional vice president was not similarly situated to the position of the younger sales and branch managers and determined that the other regional vice president who was retained was the only comparator for purposes of the fourth prong. Id. at 306-07.

Defendants in this case claim that the only employees who are similarly situated to plaintiffs are the other lieutenants. They assert that plaintiffs should only be compared to the three remaining lieutenants who were retained by the sheriff in the reduction in force. Defendants' main argument centers around the lieutenants having supervisory responsibilities that include overseeing division duties, conducting staff meetings and investigations and evaluating employee work performance. The deputies, who are the "rank and file" of the sheriff's department, have no supervisory responsibilities, but are instead supervised by the lieutenants. The only remaining employees in the sheriff's office are the senior staff, who are the highest level administrative employees in the office, and also have management and supervisory responsibilities.[5]

Plaintiffs assert that they should be compared to the deputies in the sheriff's office because they are similarly situated to these employees. Plaintiffs argue that most of the duties performed by the lieutenants in the sheriff's office are the same as those performed by the deputies. According to plaintiffs, they performed the following duties, which were also performed by the deputies that they were charged with supervising: service of civil process, service of warrants, prisoner transfer, answering citizen complaints, making arrests, traffic stops and traffic citations, patrol of county parks and other facilities, and courthouse security. Llewellyn asserts that he performed these tasks more in the past six months of employment with the department than in his previous years of employment. (Llewellyn Aff. ¶ 3.) Ramanna

---

[5] The parties agree that plaintiffs are not similarly situated with senior staff in the sheriff's office.

describes performing these kinds of activities a majority of the time he was working at the sheriff's department.  (Ramanna Aff. ¶ 4.)

Based upon the evidence of record taken in a light favorable to plaintiffs, this court finds that the deputies in the sheriff's department are not similarly situated to plaintiffs, and the only appropriate comparators are the other lieutenants.  A determination of who qualifies as a similarly situated employee is a fact-intensive inquiry which must be undertaken on a case by case basis.  Monaco, 359 F.3d at 305.  In making this determination the court "must look to the job function, level of supervisory responsibility and salary, as well as other factors relevant to the particular workplace."  Id.  The court can not compare the upper-level lieutenants with the lower-level deputies "without evidence of routine job shuffling."  Id.  (emphasis added).  Although plaintiffs have put forward evidence that deputies and lieutenants share several job responsibilities, lieutenants take on many additional responsibilities and there is no evidence that lieutenants and deputies routinely shuffle between jobs.  The lieutenants' level of supervisory responsibility is very important to this inquiry.  Lieutenants are responsible for supervisory duties which include overseeing division duties, conducting staff meetings and investigations and evaluating employee work performance.  Deputies have none of these supervisory responsibilities.  Lieutenants are salaried employees, are part of management, and not members of a union.  Deputies are paid hourly, are in entry-level positions, are members of a union and are covered by a collective bargaining agreement.  This court can not conclude that lieutenants are similarly situated to deputies and will compare Lieutenants Ramanna and Llewellyn to the other lieutenants for purposes of this summary judgment motion.

## 2.  "Sufficiently Younger" Employee

The United States Court of Appeals for the Third Circuit has recognized that the fourth element in the prima facie case of age discrimination is satisfied by showing that the employer

retained a "sufficiently younger" employee. In applying this standard, the court of appeals in Showalter v. UPMC, 190 F.3d 231, 235 (3d Cir. 1999), clarified that the "sufficiently younger" employee who was retained does not need to be outside of the protected class, as was previously required in age discrimination cases. The court of appeals stated that, "there can be no greater inference of age discrimination . . . when a 40 year-old is replaced by a 39 year-old than when a 56 year-old is replaced by a 40 year-old." Id. at 235-36. In Showalter, the court held that a plaintiff who was eight years older than one employee and sixteen years older than the other employee retained had demonstrated a sufficient age difference to suggest an inference of age discrimination. Showalter, 190 F. 3d at 236.

The court of appeals has suggested that if a plaintiff can point to a sufficient age difference between the plaintiff and the replacement, "a fact-finder could reasonably conclude that the employment decision was made on the basis of age." Sempier v. Johnson & Higgins, 45 F. 3d 724, 729 (3d Cir. 1995). The court of appeals has not clearly articulated a particular age difference that must be shown. In one decision a five year difference was sufficient while a one year difference was not. Id. at 729.

There is no "bright line" age difference test, and this court will not adopt one today. The age difference between plaintiffs and the other lieutenants in the department at the time of the reduction in force was not significant. At the time their positions were eliminated, plaintiff Llewellyn was 61 years of age, plaintiff Ramanna was 57 years of age, and the other lieutenants were aged 53, 54 and 58. Ramanna was younger than one of the lieutenants retained and only three and four years older than the other two lieutenants retained in the reduction in force. Since one of the lieutenants retained was older than Ramanna and the others were close to Ramanna's age, this court concludes no reasonable jury would find that the other lieutenants were sufficiently younger than Ramanna. Consequently, Ramanna failed to establish a prima facie

case of age discrimination against defendants and summary judgment will be granted in favor of defendants with respect to Ramanna's claims.

There is a more significant age difference between Llewellyn and the retained lieutenants. Llewellyn is older than the retained lieutenants by three years, seven years and eight years. This is a close case with respect to Llewellyn. The court notes, however, that there is no "bright line" age difference test and the facts must be viewed in a light most favorable to plaintiffs. For purposes of this summary judgment motion, the court will conclude that a reasonable fact-finder could find a sufficient age difference between Llewellyn and the retained lieutenants to support an inference of age discrimination. Because the court concludes Llewellyn adduced sufficient evidence that the retained lieutenants were sufficiently younger than Llewellyn, the court finds that the final element of Llewellyn's prima facie case of age discrimination has been met.

### B. Legitimate Non-discriminatory Reason

The second part of the McDonnell-Douglas analysis arises after the plaintiff successfully demonstrates a prima facie case of discrimination, at which time the burden of production (but not the burden of persuasion) shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment decision. See Simpson 142 F.3d 644 n.5. The defendant is not required to meet this burden by a preponderance of the evidence, but rather "the employee's prima facie case of discrimination will be rebutted if the employer articulates lawful reasons for the action; that is, to satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 257 (1981). The United States Court of Appeals for the Third Circuit characterized this burden as a "relatively light burden," noting that an employer can satisfy the burden "by introducing evidence which, taken as true, would permit the conclusion that there was

a non-discriminatory reason for the unfavorable employment decision." <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994). For purposes of this analysis the court will consider both plaintiffs and assume for the sake of argument that Ramanna had established a prima facie case.

Even if Ramanna had established a prima facie case, the facts of this case, viewed in the light favorable to plaintiffs, indicate that Ramanna and Llewellyn were terminated in the context of a county-wide reduction in force. In order to comply with instructions to reduce expenditures, the sheriff and his senior staff determined that it was necessary to eliminate two lieutenant positions. Defendants assert that the decision to eliminate two lieutenants was a staffing decision driven by budgetary concerns. The sheriff claims that he made this decision because his office was top heavy with supervisors. In deciding which of the lieutenants to terminate, the sheriff, along with his senior staff, considered the relative strengths and weaknesses of each of the five lieutenants. The sheriff maintains that all the lieutenants were competent employees, requiring him to make the difficult decision of which two were the "worse of the best." (Comb. Stat. ¶ 23.) The sheriff ultimately selected Llewellyn and Ramanna because he thought the conduct of plaintiffs on the job compared less favorably to the conduct of the other lieutenants. In coming to this conclusion, the sheriff testified he primarily relied on the opinions of his senior staff.

Specifically, with respect to Ramanna, the staff relied in part on Ramanna being considered by his superiors as resistant to authority and changes in the office, difficult to work with and supervise and lacking in interpersonal and management skills. The sheriff also took into account Ramanna's recent driving record, which included four car accidents over a period of eighteen months.

With respect to Llewellyn the sheriff believed that Llewellyn demonstrated poor judgment by flushing drug evidence seized from a crime scene down a toilet in violation of department policy and by failing to prevent a deputy under his direct supervision from taunting a

prisoner, removing his restraints, and engaging in physical contact and failing to take appropriate measures to report the incident or discipline the deputy.

Given the reduction in force situation, the sheriff selected two employees to terminate, not because they were bad employees, but because they were the "worst of the best." Comb. Stat. ¶ 23. The sheriff stated he relied on non-discriminatory factors in deciding that Llewellyn and Ramanna should be the two lieutenants to be terminated in the reduction in force. The court finds that these non-discriminatory reasons are legitimate. Based on these reasons, the court finds that defendants met the burden of presenting legitimate, non-discriminatory reasons for the plaintiffs' termination.

### C. Pretext

The final issue that the court must address with respect to summary judgment in this case is the last part of the McDonnell-Douglas framework: whether the plaintiff can demonstrate that defendant's stated reason for his termination was a pretext for age discrimination. The United States Court of Appeals for the Third Circuit developed the following two-prong test (the "Fuentes test") formulating the standard a plaintiff must meet:

> In order to survive summary judgment when the employer articulates a legitimate non-discriminatory reason for its action, plaintiff must point to some evidence, direct or circumstantial, from which a fact-finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

Fuentes, 32 F. 3d at 764 ("[Plaintiff] need not present evidence that the employer's proffered reason was false *and* that discrimination was the real reason, but may prevail by *either* discrediting the employer's proffered reasons, either circumstantially or directly, *or* by providing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action."); Williams v. St. Joan of

Arc Church, 226 F.App'x 180, 183 (3d Cir. 2007). The two prongs of the Fuentes test are distinct. The court will analyze both prongs of the Fuentes test to determine whether sufficient evidence was presented by plaintiffs to defeat defendants' motion for summary judgment. See Keller v. Orix Credit Alliance, Inc., 130 F. 3d 1101, 1108-13 (3d Cir. 1997) (analyzing ADEA action under both prongs of Fuentes framework). For purposes of this analysis the court will consider both plaintiffs and assume for the sake of argument that Ramanna had established a prima facie case.

## I.     Prong One of Fuentes Test

Prong one of the Fuentes test focuses on whether the plaintiff submitted evidence from which a fact-finder could reasonably disbelieve the employer's articulated legitimate reasons for the plaintiff's termination. Under this prong, the plaintiff must point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons [such] that a reasonable fact-finder could rationally find them 'unworthy of credence' and hence infer that the proffered non-discriminatory reason 'did not actually motivate' the employer's action." Simpson, 142 F.3d at 644. The district court under this prong must focus on the legitimate, non-discriminatory reason offered by the employer. Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992) (stating that a plaintiff "does not establish pretext . . . by pointing to criticisms of members of the non-protected class, or commendation of the plaintiff, in categories the defendant says it did not rely upon . . . .") The court is neither permitted to get involved in the subjective business decisions of the employer, nor set its own employment standards for the employer, unless there is evidence of discrimination. Ezold, 983 F.2d at 527 (3d Cir. 1992).

Cases analyzed under this prong usually survive a motion for summary judgment when the employer's stated reason for termination is so implausible that a reasonable fact-finder could

not believe it.  For example, in <u>Brewer v. Quaker State Oil Refining Corporation</u>, 72 F.3d 326 (3d Cir. 1995), the plaintiff was terminated for deficient sales performance.  The evidence of record, however, disclosed that Brewer received a bonus three months before he was fired and that he was the only sales representative in the region who had received such a bonus.  <u>Id.</u> at 329. The court held that, where the primary measure of Brewer's performance was sales, and where he was the leading salesperson in the region, his employer's stated reason for his termination was "contradictory to [its] admission that the most important standard of job performance is sales." <u>Id.</u> at 332.  According to the court, "[a] fact-finder could find it implausible that Quaker State would have fired Brewer for such deficiencies when he was successful in the sole area identified by Quaker State's own performance incentive program - sales."  <u>Id.</u>

Similarly, in <u>Sempier v. Johnson and Higgins</u>, 45 F.3d 724 (3d Cir. 1995), the employer stated that Sempier was terminated based upon poor performance that caused the company to restructure the nature of his responsibilities.  The evidence of record, however, disclosed that (1) Sempier never received any unfavorable criticism that his performance was poor or inadequate; and (2) the employer failed to produce any other evidence of poor performance or to make specific allegations of Sempier's deficiencies.  <u>Id.</u> at 731-33.  Thus, there was evidence on the record that a reasonable fact-finder could conclude that the reason given by Sempier's employer was a pretext for age discrimination.  <u>Id.</u> at 732-33.

In this case, defendants eliminated plaintiffs' positions in response to a reduction in force situation which required the sheriff's department to cut 8% of the budget.  Defendants decided to make the cut in the budget by eliminating two supervisory positions.  Defendants selected plaintiffs as the two lieutenants to be eliminated from the force because defendants contend they compared less favorably, in the eyes of the senior staff, than the other three lieutenants at that time.  It is not the function of this court to determine whether defendants' business judgment in

terminating plaintiffs was correct. Rather, the court must view the evidence to determine whether defendants' stated reasons for terminating plaintiffs could reasonably be found by a jury to be pretextual. Unlike the facts in <u>Brewer</u> or <u>Sempier,</u> here there is substantial undisputed evidence of record that supports defendants' proffered reasons for plaintiffs' termination.

Defendants stated several legitimate, non-discriminatory reasons for the termination of plaintiffs. Plaintiffs assert that the defendants' reasons are pretextual because, while the sheriff claimed that Ramanna's resistance to the sheriff's policy and procedures was one of the reasons he was selected for termination, Ramanna was never disciplined for this resistance. Plaintiffs' also assert that Ramanna was never written up or otherwise disciplined for the automobile accidents that the sheriff claims were a reason for his decision to terminate Ramanna. Llewellyn was never disciplined for the incident involving the destruction of evidence. He offered his resignation to the sheriff, but was told that he should continue with his regular duties. The sheriff stated that the decision to terminate plaintiffs was not because of incompetence, but rather, by reason of the reduction in force situation. The sheriff stated he was forced to terminate the worst of the best. Based upon these incidents, while they may not have been worthy of discipline at the time, the sheriff found that plaintiffs compared less favorably than the other lieutenants.

Plaintiffs' assertion that they were not offered positions as deputies after the two lieutenant positions were eliminated, despite being qualified for that job and the sheriff having allowed a lieutenant to "bump down" to a deputy one time in the past, is not relevant to the legitimacy of defendants' reasons for terminating plaintiffs. The Court of Appeals for the Third Circuit has specifically explained that the ADEA is not a "bumping statute," which would require defendants to offer plaintiffs the position of a younger employee. <u>Anderson</u>, 297 F.3d at 249. In <u>Anderson</u>, the court stated: "Were we to hold otherwise, we would be construing ADEA as

guaranteeing a protected employee a job at the expense of a sufficiently younger employee." Id. at 250. The court in Anderson cited Earley v. Champion International Corp., 907 F.2d 1077 (11th Cir. 1990), and Skalka v. Fernald Environmental Restoration Management, 178 F.3d 414 (6th Cir. 1999), in making this determination. In Earley, the United States Court of Appeals for the Eleventh Circuit stated that ADEA does not require an employer to discharge a younger employee so that an employee in the ADEA protected class can be retained. Earley, 907 F. 3d at 1083. In Skalka, the United States Court of Appeals for the Sixth Circuit observed that a "plaintiff cannot prevail merely by pointing to other positions for which she was qualified and claim[ed] that the employer should have allowed her to 'bump' the occupant of that position." 178 F.3d at 421.

Plaintiffs do not dispute that the conduct relied upon by defendants occurred. Plaintiffs, rather point to a comment made by Captain Shane during his deposition as evidence of pretext relating to Ramanna. In the deposition, Captain Shane referred to Ramanna as being "old school." Plaintiffs assert that this was one of the reasons that Ramanna was terminated and represents direct evidence of age discrimination. Defendants, however, explained that the phrase "old school" was mischaracterized by plaintiffs and merely referred to Ramanna being more in tune with the philosophy of the previous sheriff. The relevant testimony was:

> Q.  Was that the only reason for Lieutenant Ramanna?
> A.  No. There were other decisions - - other cases that were brought up. For example, it was, in my opinion, that Ralph was more of the old school where he didn't like the changes that sheriff DeLuca was making.
> Q.  What changes are you referring to?
> A.  Well, when we would have a meeting, then it would be said that as a team, as the management team for the office, this is what we're going to do. Instead of being a team player and saying, look, this is what we want you to do, directing to the deputies, it would be referred back to as this is what the sheriff wants you to do. Not necessarily what I want you to do, but this is what the sheriff wants

> you to do. So it's not - - it wasn't good to team cohesiveness, more
> taking the sides of the deputies.

(Shane Dep. 12:7-25, May 1, 2007.) Viewing the testimony in context, no reasonable juror could conclude that the reference to "old school" was evidence of age discrimination.

Llewellyn did not dispute the factual background of the incidents relied upon by the sheriff and offered as evidence only the assertion that he was not disciplined for his infractions. In this case where Llewellyn's termination did not occur because of poor performance but rather because of the reduction in force, the court must conclude that there is insufficient evidence from which a fact-finder could reasonably disbelieve defendants' articulated legitimate reasons for Llewellyn's termination. The court finds that plaintiffs failed to present sufficient evidence to allow a fact-finder to conclude reasonably that defendants' legitimate, non-discriminatory reasons for terminating plaintiffs' employment were pretextual under the first prong of the Fuentes test.

### 2. Prong Two of Fuentes Test

The court is next required to examine the second prong of the Fuentes framework to determine if plaintiffs presented sufficient evidence of pretext. This prong permits a plaintiff to survive summary judgment if he can demonstrate, through evidence of record, that "an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764. With respect to this prong, the United States Court of Appeals for the Third Circuit stated: "To show that discrimination was more likely than not a cause for the employer's action, the plaintiff must point to evidence with **_sufficient probative force_** that a fact-finder could conclude by a preponderance of the evidence that age was a motivating or determinative factor in the employment decision." Simpson, 142 F.3d at 644-45 (3d Cir. 1998) (emphasis added). Under this prong of the Fuentes analysis, a court considers, (1)

22

whether the employer previously discriminated against the plaintiff, (2) whether the employer has discriminated against other persons within the plaintiff's protected class or within another protected class, and (3) whether the employer has treated more favorably similarly situated persons not within the protected class.  Id.  The court will examine whether plaintiff submitted sufficient evidence under each of the three considerations listed.

### a.  Evidence of previous discrimination against plaintiffs

Plaintiffs have presented no evidence of any incidents of prior discrimination against either plaintiff in making their claims of age discrimination.  In viewing the evidence in the light most favorable to plaintiffs, plaintiffs failed to adduce sufficient evidence of previous discrimination against either or both of them to suggest that an invidious discriminatory reason was more likely than not a motivating or determinative cause of defendants' action.

### b.  Whether the employer discriminated against other persons in plaintiffs' protected class or another protected class.

Under this category, the court focuses on the defendants' treatment of its employees that fall within a protected class for purposes of workplace discrimination laws.  Specifically, the court will focus on the treatment of other employees who are above the age of 40, and therefore fall within the protected class under the ADEA.  Plaintiffs failed to produce any evidence that defendants discriminated against others within plaintiffs' protected class, or any other protected class, to suggest that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the defendants' action.

### c.  Whether employer treated more favorably similarly situated persons not within the protected class

Plaintiffs argue that several younger employees were treated differently then them, and that their treatment is evidence of age discrimination.  According to the Court of Appeals for the

Third Circuit, when an employer uses a subjective evaluation of a plaintiff's qualifications as the reason for an adverse employment decision, "the plaintiff can prove the articulated reason is unworthy of credence by presenting persuasive comparative evidence that non-members of the protected class were evaluated more favorably, *i.e.*, their deficiencies in the same qualification category as the plaintiff's were overlooked for no apparent reason . . . ." Ezold, 983 F.2d at 531.

When comparing a member of the protected class to a non-member of the protected class, "the focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action." Simpson, 142 F.3d at 645. Specifically, when comparing *subjective factors* relied upon by an employer to make an employment decision, "it must be obvious or manifest that the subjective standard was unequally applied before a court can find pretext." Ezold, 983 F.2d at 534. For example, in Ezold, the court held that the district court erred in comparing Ezold to several other male associates who were elevated to partner because the district court did not focus on the most important factor relied upon by the partnership committee to determine partnership status - legal analysis. Id. at 525. Viewing the evidence available to the district court, the court of appeals determined that the evaluations of the plaintiff in the area of legal analysis were deficient when compared to the other candidates, even though her overall grade was similar, in some respects, to several of the candidates who achieved partnership status. Id. at 534-38.

One singular comparison may not be sufficient to establish pretext. "The mere favorable treatment of one younger manager as compared to one older manager may not be sufficient to infer age discrimination." Simpson, 142 F.3d at 645. A decision adversely affecting an older employee does not become discriminatory merely because one younger employee was differently treated. Billet v. CIGNA Corp., 940 F.2d 812, 827-28 (3d Cir. 1991). Plaintiffs cannot simply rely solely upon one younger comparator to argue that less favorable treatment gave rise to an

inference of discrimination. This evidence is insufficient because, even if an employee within the protected class is similarly situated to a member of the non-protected class but treated less favorably, "reliance on a single member of the non-protected class is insufficient to give rise to an inference of discrimination" where the relationship between the plaintiff and other possible comparators is not examined. Simpson, 142 F.3d at 646.

Defendants offered several legitimate, non-discriminatory reasons in support of the decision to terminate plaintiffs' employment. These reasons were considered in a process by which the sheriff's senior staff evaluated the relative strengths and weaknesses of each lieutenant employed at the time. Of the three "senior staff" members who assisted the sheriff in making the decision regarding the budgetary cuts, one was older than both Llewellyn and Ramanna, one was "significantly younger" than the two plaintiffs, and all three were above the age of forty, placing them under the purview of the ADEA. Compared with the three lieutenants who were retained, Ramanna is younger than one of the lieutenants and close in age with the other two. Llewellyn is older than each of the three retained, by up to eight years when compared to the youngest. Each of the lieutenants employed by the sheriff's department were also over the age of forty and therefore within the ADEA protected class.

Plaintiffs assert that defendants' failure to offer Llewellyn and Ramanna positions as deputies rather than terminating them is evidence of pretext. As discussed previously, the Court of Appeals for the Third Circuit has held that the ADEA is not a "bumping statute" requiring the sheriff to offer-up the positions of younger employees in favor of older employees when possible. Anderson, 297 F.3d at 249. Rather, defendants were able to decide whether to offer plaintiffs lower level positions, after both had worked at the supervisory level for years, or retain those employees currently holding the positions of deputies. Defendants could use subjective reasons in making this determination, and the offered reasons will only amount to evidence of pretext if it

is clear that the standard was unequally applied.  <u>Ezold</u>, 983 F.2d at 534.  The sheriff explained that his staff and he did not consider the possibility of "bumping down" plaintiffs to a deputy position because the sheriff believed that doing so would be in violation of the deputies' collective bargaining agreement.  Even considering, as plaintiffs argue, that the sheriff's own interpretation of that contract may have been flawed, and that he did not seek out a legal interpretation of the language, the court can not conclude that a reasonable jury could find the sheriff's consideration of the agreement to be an unequal application of a subjective standard.

Plaintiffs failed to adduce sufficient evidence to suggest that defendants treated more favorably similarly situated persons not within the protected class to suggest that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the defendants' action.  Plaintiffs have failed to meet either of the two prongs of the <u>Fuentes</u> test.

### *Conclusion*

After reviewing the undisputed material facts of record, viewing all disputed facts in favor of plaintiffs and drawing all reasonable inferences in favor of plaintiffs, the court determines that Ramanna failed to establish a prima facie case, and that, even had he done so, plaintiffs did not produce sufficient evidence for a reasonable fact-finder to conclude that defendants' reasons for terminating plaintiffs' employment were pretextual under either prong of the <u>Fuentes</u> analysis.  Accordingly, summary judgment will be granted in favor of defendants.


<u>/s/ Joy Flowers Conti</u>
Joy Flowers Conti
United States District Judge


cc: Counsel of Record